## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**TAMMI MICHELLE MOSELEY**                                                **PLAINTIFF**

**V.**                                                **CIVIL ACTION NO. 1:21CV201 HSO-LGI**

**KILOLO KIJAKAZI, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**                                    **DEFENDANT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Tammi Moseley appeals the final decision denying her application for a period of disability and disability insurance benefits ("DIB"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge ("ALJ"). Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be remanded.

On January 27, 2020, Plaintiff filed an application for benefits alleging a disability due to right foot impairments, including but not limited to, fracture of the talus bone, arthritis, fibromatosis, fibroma, and plantar fasciitis. Plaintiff is a community college graduate and was 54 years old at her administrative hearing, with past work experience as a medical laboratory technician. Following agency denials of her application, the ALJ rendered an unfavorable decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. She now appeals that decision.

**Factual Background**

The medical evidence is detailed in the memorandum briefs and will not be repeated in depth here. As noted *supra*, Plaintiff alleges disability due to right foot impairments, the origin of which she contends is unknown. At the administrative hearing, Plaintiff testified that she experiences pain when she stands for extended periods of time and must elevate her legs to prevent swelling. However, she can ambulate "pretty well" around the house and can attend to her personal needs and light housekeeping duties so long as she takes frequent breaks.

Relevant here, records show that Plaintiff was working as a lab technician for her long-term employer, Singing River Health System, at the onset of her disability while undergoing treatment for her impairments. Though she initially listed January 5, 2020 as the onset date on her disability application, Plaintiff's counsel moved to amend the onset date at the administrative hearing to September 27, 2019, citing it as the date that Plaintiff last worked.[1] Upon questioning by the ALJ, however, Plaintiff testified that her last day of work was actually January 5, 2020:

---

[1] By its terms, an onset date is the date on which a disability claimant alleges that he or she became disabled. *See Nix v. Barnhart*, 160 F. App'x 393, 396 (5th Cir. 2005) ("Under [Social Security Ruling] 83–20, the disability onset date is 'the first day an individual is disabled as defined in the [Social Security] Act and the regulations.'"). The undersigned notes that while the ALJ granted Plaintiff's request to amend her onset date from January 5, 2020, to September 27, 2019, at the administrative hearing, he cited September 19, 2019, as the amended onset date in his written decision. Plaintiff does not challenge or otherwise address the date change on appeal but cites both September dates interchangeably in her memorandum brief. The undersigned also notes record evidence indicating that Plaintiff was working full time through September 30, 2019, before stopping, and returning to work on December 16, 2019. Notwithstanding these discrepancies, the precise September date that Plaintiff stopped working is not critical to the disposition of this appeal. On remand, however, the ALJ should address the inconsistency and make a definitive finding concerning Plaintiff's amended onset date.

> Q: When was the last time that you worked full-time or part-time? Can you recall when that was?
>
> A: The last date that I worked was January the fifth of this year.
>
> Q: And, why did you stop working at Singing River in January?
>
> A: After much treatment and effort to try to work, it, it became impossible to accomplish my job duties with the pain and the difficulty walking from my ankle. The doctor would not release me to go back to work without restrictions, and my employer would not continue employment in my position [with] restrictions.
>
> Q: So, you were fired? You came to a mutual agreement about departure? How did that work? What happened?
>
> A: When I informed my department director that the doctor would not release me without restrictions, she said that I could not retain my position.
>
> Q: Okay. So, sounds like you were let go.
>
> A: Yes, sir.

Though not addressed in the proceedings, the undersigned notes that medical records indicate that Plaintiff was kept from work "due to her non-weightbearing status," and was released on December 11, 2019, to "weightbearing as tolerated with a walking boot," with the following restrictions:

> "She is not to stand for more than 15 min. at a time. She is to have frequent separate breaks. She is to not carry and lift any more than 10 pounds."

On December 16, 2019, Plaintiff returned to work where she proceeded to work a number of shifts until January 5, 2020.[2] Consistent with her hearing testimony, correspondence

---

[2] Plaintiff worked shifts on the following dates: December 16th, 18th, 23rd, 27th, 31st, and January 2nd, 4th, and 5th.

3

from her employer dated January 14, 2020, notes that "employee has been released to work but with restrictions and we cannot accommodate."

On December 31, 2020, the ALJ issued a decision dismissing Plaintiff's claim at step one of the five-step sequential evaluation[3] on the grounds that there had been no continuous twelve-month period in which Plaintiff had not engaged in substantial gainful activity. Plaintiff asserts this was error because the ALJ failed to consider whether her post-onset date work activity was an unsuccessful work attempt under 20 C.F.R. § 404.1574(c)(2). Had he done so, Plaintiff argues that he would not have prematurely dismissed her claim at step one. The Commissioner counters that the ALJ was not required to undertake an unsuccessful-work-attempt analysis and the decision should be affirmed. The undersigned finds Plaintiff's position is well-taken and recommends that this matter be remanded for further proceedings.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018). Substantial evidence "means—and means only—such relevant evidence as a reasonable

---

[3] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (internal quotation marks and citation omitted). It must be more than a scintilla, but it need not be a preponderance. *Id.* In reviewing an appeal, this Court may not re-weigh the evidence, try the case de novo, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). As the United States Supreme Court recently reiterated:

> The phrase "substantial evidence" is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek*, 139 S. Ct. at 1154 (citations and internal quotations and brackets omitted); *see also Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling*, 36 F.3d at 434.

**Discussion**

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant who has engaged in any substantial gainful activity during the 12-month duration period from the onset of her conditions is precluded from receiving disability benefits.[4] If the claimant is so engaged, the inquiry ends at step one of the sequential evaluation, and the claimant is found not disabled, regardless of their medical condition, age, or work experience. 20 C.F.R. § 404.1520(b).

Social Security Regulations provide the following guidance about substantial gainful activity:

> Your earnings may show you have done substantial gainful activity. Generally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity. We will use your earnings to determine whether you have done substantial gainful activity unless we have information from you, your employer, or others that shows that we should not count all of your earnings. The amount of your earnings from work you have done (regardless of whether it is unsheltered or sheltered work) may show that you have engaged in substantial gainful activity. ***Generally, if you worked for substantial earnings, we will find that you are able to do substantial gainful activity.*** However, the fact that your earnings were not substantial will not necessarily show that you are not able to do substantial gainful

---

[4] In considering "duration," it is the inability to engage in substantial gainful activity because of the impairment that must last the required 12–month period. *Id.; see also Barnhart v. Walton*, 535 U.S. 212, 217–22, 122 S. Ct. 1265, 1264, 152 L. Ed. 2d 330, 300 (2002) (the inability to work, not just the impairment upon which it is based, must last 12 months).

> activity. ***We generally consider work that you are forced to stop or to reduce below the substantial gainful activity level after a short time because of your impairment to be an unsuccessful work attempt. Your earnings from an unsuccessful work attempt will not show that you are able to do substantial gainful activity.*** We will use the criteria in paragraph (c) of this section to determine if the work you did was an unsuccessful work attempt.

§ 20 C.F.R. § 404.1574 (a)(1) (emphasis added). The regulations provide further in relevant part, that if a claimant is paid a certain threshold amount of monthly earnings for a given calendar year, the job is presumed to constitute "substantial gainful activity." 20 C.F.R. §§ 404.1574(a)(1), (b)(2), 416.974(a)(1), (b)(2). If the amount of monthly earnings falls below this threshold, the job is presumed not to be "substantial gainful activity." *Id.*

Relevant here, wage earnings averaging more than $1220 are presumptive of substantial gainful activity for work performed in 2019, while monthly earnings averaging more than $1260 are presumptive for work performed in 2020.[5] Records confirm that Plaintiff's post-onset date earnings for the fourth quarter of 2019 (October, November, December) were $5,705 for an average of $1,901, while her earnings for the first quarter of 2020 were $1,577 for the month of January—the only month in which she worked that year.[6] Based on this evidence, the ALJ concluded at step one that Plaintiff's earnings "constituted substantial gainful activity from September 2019 through January

---

[5] *See* Program Operating Systems Manual (POMS) DI 10501.015, Table 2. https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last visited June 6, 2022).

[6] Earning records show that Plaintiff earned a total of $40,840. 42 in 2019. Her total earnings for the third quarter of 2019 were $11,161 for an average of $3,720 per month. Her earnings for the second quarter of 2020 were $59 after her employment had ceased.

2020."

The inquiry does not end here, however. While the Commissioner's primary consideration for evaluating substantial gainful activity is the amount of earnings a claimant derives, the governing regulation plainly provides that "earnings from an unsuccessful work attempt will not show that you are able to do substantial gainful activity," and that the criteria in subsection (c) of the regulation will be used "to determine if the work you did was an unsuccessful work attempt." 20 C.F.R. § 404.1574(a)(1). *See* 20 C.F.R. § 404.1574(c). Courts have long construed this language as creating a rebuttable presumption, *i.e*, that a claimant can rebut the earnings presumption with evidence of an unsuccessful work attempt. *See Cooper v. Barnhart*, 55 F. App'x 716 (5th Cir. 2002) (noting that earnings are presumptive proof under the regulations); *White v. Heckler*, 740 F.2d 390, 394 (5th Cir. 1984) (earnings presumption, "if unrebutted by the claimant, negates a finding as the *inability* to engage in substantial gainful activity) (quoting *Davis v. Schweiker*, 641 F.2d 283, 286 (5th Cir. 1981)) (emphasis in original). *See also Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 747 (6th Cir. 2018) ("mere existence of earnings over the statutory minimum is not dispositive") (quoting) *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990); *Payne v. Sullivan*, 946 F.2d 1081, 1083 (4th Cir. 1991) ("presumption of substantial gainful activity is not to be rigidly applied, and it may be rebutted").

Social Security Regulations provide the following guidance for assessing an unsuccessful work attempt:

> (1) General. Ordinarily, work you have done will not show that you are able to do substantial gainful activity if, after you worked for a period of 6 months or less, your impairment forced you to stop working or to reduce the amount of work you do so that your earnings from such work fall below the substantial gainful activity earnings level in paragraph (b)(2) of this section, and you meet the conditions described in paragraphs (c)(2), (3), and (4) of this section. We will use the provisions of this paragraph when we make an initial determination on your application for disability benefits and throughout any appeal you may request. Except as set forth in § 404.1592a(a), we will also apply the provisions of this paragraph if you are already entitled to disability benefits, when you work and we consider whether the work you are doing is substantial gainful activity or demonstrates the ability to do substantial gainful activity.
>
> (2) Event that must precede an unsuccessful work attempt. There must be a significant break in the continuity of your work before we will consider that you began a work attempt that later proved unsuccessful. You must have stopped working or reduced your work and earnings below the substantial gainful activity earnings level because of your impairment or because of the removal of special conditions that were essential to the further performance of your work. We explain what we mean by special conditions in § 404.1573(c). We will consider your prior work to be "discontinued" for a significant period if you were out of work at least 30 consecutive days. We will also consider your prior work to be "discontinued" if, because of your impairment, you were forced to change to another type of work or another employer.
>
> (3) If you worked 6 months or less. We will consider work of 6 months or less to be an unsuccessful work attempt if you stopped working or you reduced your work and earnings below the substantial gainful act

20 C.F.R. § 404.1574(c). In short, the Commissioner will consider a work attempt to be unsuccessful if (1) the claimant was out of work at least 30 consecutive days before the work attempt; (2) the work attempt lasted six months or less; and (3) the claimant stopped working or reduced her workload and earnings below the substantial gainful activity earnings level because of her impairment. 20 C.F.R. § 404.1574(c).

Here, Plaintiff argues that she satisfies all the requirements of an unsuccessful work attempt because there was a break in the continuity of her work lasting more than 30 days followed by an unsuccessful work attempt due to her impairments. The medical, employment and testimonial evidence would appear to support this contention. Indeed, despite the inconsistencies surrounding Plaintiff's onset date, records show that Plaintiff was working full time in September 2019 before stopping and resuming in December 2019. She was released to work "weightbearing as tolerated with a walking boot" and other restrictions, but stopped on January 5, 2020, because the restrictions could not be accommodated.

The Commissioner acknowledges that there was more than a 30-day gap between Plaintiff's September and December shifts in 2019. However, the Commissioner maintains that there is no indication that the Plaintiff's work was discontinued during this time frame, insofar as there was no evidence that she had been terminated by her employer or quit. The Commissioner does not, however, cite any regulatory or circuit authority for the proposition that a discontinuance requires termination or quitting. The regulations provide only that "[w]e will consider your prior work to be "discontinued" for a significant period if you were out of work at least 30 consecutive days," or "if "because of your impairment, you were forced to change to another type of work or another employer." 20 C.F.R. § 404.1574(c). The Commissioner also highlights the fact that Plaintiff has worked the same job for the same employer since January 1990, and further maintains that there is no corroborating evidence that Plaintiff stopped working because her employer would not accommodate her work restrictions. But as other courts have

held, the "type of work and duties a Social Security claimant performs are not relevant to the unsuccessful work attempt analysis." *Norton v. Saul*, No. CV 19-9307, 2020 WL 1067011, at *8 (E.D. La. Feb. 4, 2020), *report and recommendation adopted,* No. CV 19-9307, 2020 WL 1065114 (E.D. La. Mar. 5, 2020).  And contrary to the Commissioner's assertions, correspondence from her employer dated January 14, 2020, notes that the "employee has been released to work but with restrictions we cannot accommodate."

In any event, whether Plaintiff's post-amended onset work activity was an unsuccessful work attempt is an analysis encompassed in 20 C.F.R. § 404.1574 (a)-(c), and it is one that should be undertaken by the ALJ in the first instance, not on appellate review.  The failure to do so was error and could have prejudiced the result.  *Lillie Hardine, Plaintiff-Appellant, v. Kilolo Kijakazi, Acting Commissioner Of Social Security, Defendant-Appellee.*, No. 21-60226, 2022 WL 2070399, at *2 (5th Cir. June 8, 2022); *Brock*, 84 F.3d at 728.  The undersigned expresses no opinion on whether Plaintiff is indeed disabled under the Act.  In fact, further analysis on remand may very well result in the same conclusion. However, because the ALJ failed to make a finding as to whether Plaintiff's post-amended onset work activity was an unsuccessful work attempt, the undersigned recommends that the case be remanded for further proceedings consistent with this opinion.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file written objections within 14 days after being served with a copy of this Report and

Recommendation.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on June 17, 2022.

s/ LaKeysha Greer Isaac  
UNITED STATES MAGISTRATE JUDGE
